1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10   YEMESERACH GEBRESERALSE,

11                  Plaintiff,                        CASE NO. 2:19-CV-1909-DWC

12        v.                                          ORDER GRANTING PLAINTIFF'S
                                                     MOTION FOR SUMMARY
13   COLUMBIA DEBT RECOVERY,                          JUDGMENT
     LLC,
14
                    Defendant.
15

16          Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR

17   13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.

18   Dkt. 6. Currently before the Court is Plaintiff Yemeserach Gebreseralse's Motion for Partial

19   Summary Judgment. Dkt. 13. The Court has considered the relevant record and concludes

20   Defendant Columbia Debt Recovery has failed to rebut Plaintiff's evidence showing she is

21   entitled to summary judgment as to liability and as to Defendant's bona fide error defense.

22   Accordingly, Plaintiff's Motion for Partial Summary Judgment (Dkt. 13) is GRANTED.

23

24

I.     **Background**

In the Complaint, Plaintiff contends Defendant used false, deceptive, or misleading representations in violation of 15 U.S.C. §§ 1692e, 1692f and the Washington State Consumer Protection Act ("CPA") in connection with the collection of an alleged debt related to her termination of a rental lease. Dkt. 1-3. Plaintiff initiated this case in the state superior court. Dkt. 1-3. Defendant removed this case from the state court to this Court on November 22, 2019.

On May 14, 2020, Plaintiff filed the Motion for Partial Summary Judgment. Dkt. 13. Defendant filed its Response to the Motion on June 1, 2020 and Plaintiff filed her Reply on June 5, 2020. Dkt. 15. The Court heard oral argument on July 14, 2020.[1] Following oral argument, the parties requested an opportunity to mediate this case prior to the Court ruling on the Motion. After an unsuccessful settlement conference, the Court stayed this case for the parties to complete litigation on the underlying state court action. *See* Dkts. 21-25.

The stay was lifted on February 16, 2023, and the Court allowed the parties to file supplemental briefing related to the Motion for Partial Summary Judgment. Dkts. 43, 44. On March 15, 2023, Defendant filed a supplemental response to the Motion for Partial Summary Judgment. Dkt. 46.[2] Plaintiff filed a response to Defendant's supplemental response on March 20, 2023. Dkt. 47. Defendant did not file a reply. The Court finds this matter can be decided based on the initial oral argument and the record; therefore, the Court declines any requests for additional oral argument.

---

[1] During the hearing, the Court heard argument from Attorney Jason Anderson, on behalf of Plaintiff, and Attorney Mark Case, on behalf of Defendant.

[2] Defendant's supplemental response was over the length allowed by the Court. *See* Dkts. 44, 46. Within Defendant's supplemental response, Defendant requested to file a brief two pages longer than allowed by the Court. *See* Dkt. 46 at 12. Defendant's request was found at the end of the supplemental response and did not comply with the Local Civil Rules. The Court will consider the entire brief filed; however, the Court notifies Defendant that failure to comply with this Court's orders or the federal or civil rules in future filings may result in sanctions.

1    **II.    Standard of Review**

2    Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

3    file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

4    movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

5    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

6    showing on an essential element of a claim in the case on which the nonmoving party has the

7    burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

8    fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

9    the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

11   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

12   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

13   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

14   *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

15   626, 630 (9th Cir. 1987).

16   **III.    Motion to Strike**

17   In her Reply, Plaintiff moved to strike numerous statements from Kerry Christensen's

18   Declaration, arguing the statements lack foundation. Dkt. 15, p. 3-4. Only admissible evidence

19   may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America, NT &*

20   *SA,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). A party may object to cited

21   documentation asserting the material cited would not be admissible in evidence. Fed. R. Civ. P.

22   56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set

23   forth facts that would be admissible in evidence, and must show the declarant or affiant is

24   competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). To the extent that statements

1  in the Christensen Declaration (Dkt. 18) do not meet the requirements of Rule 56, the statements

2  will not be considered by the Court.

3  **IV.    Evidence**

4        The relevant evidence shows Plaintiff entered into a one-year lease agreement with

5  Sunset Square Townhomes, located in Renton, Washington, with a term from May 1, 2017

6  through April 30, 2018. Dkt. 14-1; Dkt. 13-2, Gebreseralse Dec., ¶ 3. Plaintiff paid a $1,400.00

7  security deposit. Dkt. 13-2, Gebreseralse Dec., ¶ 4. Upon moving into Sunset Square, Plaintiff

8  experienced several problems, including mold and an exterior door that would not lock. *Id*. at ¶¶

9  5-6. Plaintiff raised the issues with on-site management; however, she did not provide notice in

10  writing. *Id*. at ¶¶ 6, 8. Sunset Square management failed to address nearly all of Plaintiff's

11  concerns and Plaintiff notified Sunset Square management that she would be vacating the

12  townhome in October of 2017. *Id*. at ¶ 7. There is no dispute that Plaintiff vacated the townhome

13  in October 2017, prior to the expiration of the lease, and the townhome was re-rented in

14  December 2017. Dkt. 14-1, p. 5.

15        In 2018, Plaintiff began receiving letters and phone calls from Defendant "seeking to

16  collect money based on [Plaintiff's] tenancy at Sunset Square. *Id*. at ¶ 10. In October of 2018,

17  Defendant provided Plaintiff with a detailed description of the alleged debt. *Id*. at ¶ 12. Plaintiff

18  received a Statement of Security Deposit Accounts ("Statement") showing her debt to Sunset

19  Square was $4,750.00. Dkt. 13-2, p. 6. The Statement showed, in relevant part,

20

21

22

23

24

| Balances Due: | Rent | 1,400.00 |
|---|---|---|
| | Rent | 1,275.00 |
| | NSF Fee | 50.00 |
| | Utility Bill Back | 75.00 |
| | Utility Bill Back | 75.00 |
| | Utility Bill Back | 75.00 |
| | Carpet Cleaning | 75.00 |
| | Cleaning Apartment | 75.00 |
| | Forfeited Security | 1,400.00 |
| | Maintenance Repairs | 25.00 |
| | Painting | 150.00 |
| | Utility Bill Back | 75.00 |
| | | ------------ |
| | | 4,750.00 |

| Total Deposits | 0.00 |
|---|---|
| Total Prepaid | 0.00 |
| Applied to Due | 0.00 |
| Applied to Other | 0.00 |
| | ------------ |
| Refunded | 0.00 |
| | ------------ |
| Due Property | 4,750.00 |

*Id*. Defendant did not give Plaintiff credit for her $1,400.00 security deposit and charged Plaintiff for a forfeited security deposit. *See id*. Defendant asserts the entry identified as "Forfeited Security" was the charge for the November rent. Dkt. 14-1, p. 5. Defendant also contends that, pursuant to the lease agreement, Plaintiff forfeited her security deposit when she vacated the premises prior to the end of the lease and without proper notice. *Id*. at pp. 2, 9.

On February 6, 2019, Defendant sent Plaintiff a letter. Dkt. 14-2. The letter states that Plaintiff owed a principal balance in the amount of $4,750.00 and interest in the amount of $735.00. Dkt. *Id*. at p. 16. The letter indicated Plaintiff qualified for a balance reduction of up to 50% and the offer expired February 28, 2019. *Id*. The letter also stated Plaintiff's account accrued interest at a rate of 12% per year factored to a daily rate. *Id*.

Defendant sent Plaintiff an email on March 22, 2019. Dkt. 13-2, Gebreseralse Dec., ¶ 16; Dkt. 14-2, p. 18. The email stated Plaintiff owed a principal balance in the amount of $4,750.00 and interest in the amount of $137.4247. Dkt. 13-2, p. 8. The email indicated Plaintiff qualified for a balance reduction of up to 50%, but stated the offer expired February 28, 2019. *Id*. The

email also stated Plaintiff's account accrued interest at a rate of 8% per year factored to a daily rate. *Id*.

Defendant sent Plaintiff a letter on April 5, 2019. Dkt. 13-2, Gebreseralse Dec., ¶ 17; Dkt. 14-2. The April 5, 2019 letter stated Plaintiff owed a principal balance of $4,750.00 and interest in the amount of $837.04. Dkt. 13-2, p. 11. The letter stated Plaintiff's account was accruing interest at a rate of 12% per year factored to a daily rate. *Id*. The letter again informed Plaintiff she was qualified for a balance reduction of up to 50%, and the offer expired on April 30, 2019. *Id*.

On August 20, 2019, Defendant filed a lawsuit against Plaintiff in the King County District Court in Washington State. Dkt. 13-2, pp. 13-14. The lawsuit alleged Plaintiff owed Defendant $4,750.00 plus interest and attorney fees. *Id*. at p. 14.

**V.    Discussion**

In the Motion, Plaintiff asserts Defendant's conduct breached (1) the Fair Debt Collection Practices Act ("FDCPA") and (2) the Washington CPA. Dkt. 13. In the supplemental response, Defendant now asserts Plaintiff lacks standing to bring this case, Dkt. 46, which the Court must first address before turning to Plaintiff's arguments.

A.    <u>Standing</u>

To demonstrate Article III standing, a plaintiff must show that he or she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000) (citation omitted). Concreteness and particularization are two separate requirements. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan v. Defenders of*

1    *Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A concrete injury must be de facto; that is, it must

2    actually exist." *Id*. at 1548 (internal quotations omitted).

3         Defendant argues Plaintiff's claims that Defendant's letters "confused" or "misled" her

4    are insufficient to establish standing. Dkt. 46, pp. 6-9. Plaintiff alleges Defendant used false,

5    deceptive, or misleading representations or means in connection with its attempts to collect an

6    alleged debt. Dkt. 1-3, p. 5. The record shows Defendant sent communications to Plaintiff that

7    included different amounts of interest, different interest rates, and expired offer expiration

8    deadlines. *See* Dkt. 14-2. The Court finds these informational violations are sufficient to allege

9    an injury in fact. Therefore, the Court finds Plaintiff has standing to bring the alleged claims

10    against Defendant. *See Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839, at

11    *8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain

12    harmful practices; it logically follows that those practices would themselves constitute a concrete

13    injury.").

14         B.   Fair Debt Collection Practices Act

15         Plaintiff asserts that Defendant violated §§ 1692e and 1692f of the FDCPA. Dkt. 1-3, 13.

16    Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors.

17    15 U.S.C. § 1692. The statute imposes strict liability on debt collectors, meaning violations do

18    not have to be knowing or intentional. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005

19    (9th Cir. 2008). Whether a debt collector's conduct violates FDCPA provisions "requires an

20    objective analysis that considers whether 'the least sophisticated debtor would likely be misled

21    by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). In

22    the Ninth Circuit, whether an FDCPA violation has occurred is a question of law. *Tourgeman v.*

23    *Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

24

1    There is no dispute between the parties that Defendant is a debt collector subject to

2    FDCPA liability or that the debt it sought to collect falls within the statute's purview. Thus, the

3    Court will examine only if Defendant's conduct violated §§ 1692e and/or 1692f of the FDCPA.

4    Under § 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading

5    representation or means in connection with the collection of any debt." Under § 1692f, "[a] debt

6    collector may not use unfair or unconscionable means to collect or attempt to collect any debt,"

7    which includes the "collection of any amount (including any interest, fee, charge, or expense

8    incidental to the principal obligation) unless such amount is expressly authorized by the

9    agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

10    Plaintiff asserts the communications in the March 2019 and April 2019 letters were false

11    or misleading. Dkt. 13, pp. 10-11. Plaintiff also asserts the amount sought was in excess of the

12    amount permitted by law. *Id*. at pp. 10-12. Defendant contends it did not violate the FDCPA.

13    Dkts. 14; 46. However, even if there was an FDCPA violation, the bona fide error defense

14    applies. Dkt. 14, pp. 12-15.

15        i.   Communications

16    The evidence shows Defendant sent Plaintiff an email on March 22, 2019 in an attempt to

17    collect the alleged debt. Dkt. 13-2, pp. 8-9. The email contained false or misleading information.

18    The email stated the principal amount due was $4,750.00 and the interest due was $137.4247.

19    Regardless of whether the principal amount is accurate (which the Court finds is not), the interest

20    amount is inaccurate as it does not reflect a proper monetary number – the dollar amount cannot

21    contain 4247 in cents. Further, the email states the interest rate is 8%. *Id*. at p. 9. Defendant

22    concedes both the interest amount and interest rate are incorrect. *See* Dkt. 18, Christensen Dec.,

23    pp. 2-3. Further, the email states the offer to settle for up to a 50% reduction of the debt expired

24

1    three weeks before the email was sent to Plaintiff. The Court finds the evidence, viewed in the

2    light most favorable to Defendant, shows the March 2019 email contained false and misleading

3    information.

4         Defendant argues the March 22, 2019 email is not materially misleading and therefore

5    does not violate the FDCPA. Dkt. 14, p. 15. "In assessing FDCPA liability, [the courts] are not

6    concerned with mere technical falsehoods that mislead no one, but instead with genuinely

7    misleading statements that may frustrate a consumer's ability to intelligently choose his or her

8    response." *Donohue*, 592 F.3d at 1034. Here, the March 2019 email does not contain "mere

9    technical falsehoods," such as simply mislabeling the debt as at issue in *Donohue*. Rather, the

10   email provides a different interest amount and rate which made the total amount of debt

11   inaccurately reported to Plaintiff.

12        Further, Plaintiff had received communications from Defendant stating different interest

13   amounts and a different interest rate. *See* Dkt. 14-2. For example, on February 6, 2019,

14   Defendant sent Plaintiff a letter stating the total amount of debt owed was $5,485.53, with an

15   interest amount of $735.53 and an interest rate of 12%. *Id*. at p. 16. And, on April 5, 2019,

16   Defendant sent Plaintiff a letter stating the total amount due was $5,587.04, with an interest

17   amount of $837.04 calculated at a 12% interest rate. *Id*. at p. 21. The March 2019 letter, with a

18   much lower interest amount and a 4% lower interest rate, is even more confusing and misleading

19   given the other communications indicating different interest rates, interest amounts, and total

20   debt due. Moreover, the deadline to accept the offer to reduce her alleged debt expired weeks

21   before the March 2019 email was sent to Plaintiff. The Court finds the March 2019 email

22

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9

1   contained misleading statements that could have frustrated Plaintiff's ability to intelligently

2   choose her response.[3]

3           For these reasons, the Court finds the errors in the March 22, 2019 email are materially

4   misleading. Thus, the March 22, 2019 email violates the FDCPA. *Compare Lox v. CDA, Ltd.*,

5   689 F.3d 818, 827 (7th Cir. 2012) (noting a false statement would be material "if the rate of

6   interest were misstated") *with Donohue*, 592 F.3d at 1033 (finding information was not

7   materially false because the mislabeling did not mischaracterize the total debt).

8           ii.     Demand for debt not owed

9           Plaintiff also argues Defendant's demand for a payment of $4,750.00 in principal was

10  incorrect and therefore violated §§ 1692e and 1692f. Dkt. 13, p. 10. Here, the Statement, which

11  was provided to Plaintiff from Defendant to explain the debt, contained false or misleading

12  information. First, the Statement states Plaintiff owes two different rent amounts ($1,400.00 and

13  $1,275.00). Dkt. 13-2, p. 6. There is nothing to explain this discrepancy or why she would be

14  charged different rent amounts. Second, the Statement states Plaintiff owes a forfeited security

15  deposit of $1,400.00. *Id.* Thus, the Statement appears to charge Plaintiff $1,400.00 for an

16  additional security deposit. Third, the Statement states Plaintiff's total deposits are $0.00 and

17  there is no indication the Statement credited Plaintiff $1,400.00 for the security deposit she paid

18  upon moving into Sunset Square. The Statement contains misleading information that is material

19

20

21      [3] Defendant asserts if Plaintiff would have contacted Defendant she "very likely would have saved
        considerably more than the difference in the interest stated in March 2019 and April 2019" because the March 2019

22      email offered up to a 50% reduction of the account balance. Dkt. 18, Christensen Dec., pp. 4-5. The Court finds this
        has no bearing on whether Defendant's communication violated the FDCPA. Further, "consumers are under no
        obligation to seek explanation of confusing or misleading language in debt collection letters." *Gonzales v. Arrow*

23      *Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). The fact that Defendant now states they would have honored
        the lower amount does not excuse the false and misleading statements. There was no indication Plaintiff was aware
        Defendant would honor the errors or what information was accurate between all the communications.

24

1   because the Statement did not accurately state the amount of debt owed and a debtor would not

2   be able to determine the amount of debt actually owed based on the information in the

3   Statement.[4] *See Williams v. Columbia Debt Recovery, LLC*, 579 F. Supp. 3d 1203, 1210 (W.D.

4   Wash. 2022) (finding Defendant's false and misleading statements were material because the

5   letter at issue did not clearly or accurately state the total amount due and, therefore, the least

6   sophisticated debtor would have been unable to identify the accurate sum owed).

7          Defendant asserts the principal amount of the debt is accurate and, thus, the Statement is

8   not false or misleading. Dkt. 14. However, "a literally true statement can still be misleading."

9   *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). Further, "consumers

10  are under no obligation to seek explanation of confusing or misleading language in debt

11  collection letters." *Id*. The Statement indicates Plaintiff was billed for a security deposit and was

12  not credited for the security deposit she paid. There is also no explanation regarding differences

13  in rent amounts. *See* Dkt. 14-1, p. 21. Defendant has submitted a declaration asserting Plaintiff

14  was charged different rent amounts because she had submitted partial payment for September,

15  but this is not adequately explained in the Statement. Dkt. 14-1. Defendant also contends the

16  "Forfeited Deposit" was November rent. *Id*. However, the Statement does not indicate a charge

17  for November rent, does not indicate Plaintiff's paid security deposit, and appears to charge a

18  second security deposit. *See id*. at p. 21. Defendant sought a principal amount that was inflated

19  by, at least, $1,400.00 (plus the interest accruing on that amount) because Plaintiff's security

20  deposit was unlawfully forfeited. *Gebreseralse v. Columbia Debt Recovery*, 24 Wash. App. 2d

21  650 (2022) (security deposit unlawfully forfeited); *see also Creager v. Columbia Debt Recovery*,

22

23          [4] Plaintiff asserts there are other errors in the Statement, such as the "NSF Fee." *See* Dkt. 13-2,
    Gebreseralse Dec., ¶ 14. The Court finds the additional errors are not material to its decision.

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11

618 F.Supp.3d 1094, 1106 (W.D. Wash. 2022) (Defendant Columbia Debt Recovery conceding a security deposit was withheld in violation of the Residential Landlord Tenant Act).

The Statement is confusing and misleading and the record fails to support Defendant's contention that the amount of debt sought by Defendant was accurate. Therefore, the Statement violated both §§ 1692e and 1692f.

iii.    Bona fide error defense

Defendant argues that if there were violations of the FDCPA, the bona fide error defense applies. Dkt. 14, pp. 12-15; *see also* Dkt. 46. "Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." *McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted). The defense provides:

A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

"The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *McCollough,* 637 F.3d at 948 (citation omitted). "Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Id.*

In its Response to the Motion, Defendant asserts the mistakes in the March 2019 email were a result of a bona fide error. Dkt. 14, p. 12. Defendant has not put forth evidence showing the FDCPA was violated unintentionally. Defendant's evidence shows it has not been able to determine why the information contained in the March 2019 email was incorrect. Dkt. 18,

1   Christensen Dec., p. 3. Defendant provides only speculation that its "employee inadvertently

2   failed to insert the correct interest amount and rate and failed to change the response date from

3   February 28, 2019." *Id*. at p. 4. Defendant's speculation is not sufficient to show the FDCPA was

4   violated unintentionally. Without evidence from the employee who created and sent the March

5   2019 email, the Court finds Defendant has not met is burden or created a genuine issue of

6   material fact showing the bona fide error defense applies to the March 2019 email.

7        Even if Defendant's error was unintentional, Defendant fails to satisfy its burden of

8   demonstrating that it had "maintained procedures reasonably adapted to avoid the violation." *See*

9   *McCollough*, 637 F.3d at 948. Defendant submits a Declaration stating that Defendant maintains

10  ongoing training and testing to ensure compliance with the FDCPA. Dkt. 18, Christensen Dec.,

11  p. 5. Defendant states that interest is calculated on a daily basis by the operating system based on

12  the assigned amount or principal, the delinquency date, and the current date. *Id*.

13       The "conclusory declaration that [Defendant] maintained the required procedures is not

14  enough to show Defendant is entitled to the bona fide error defense." *Frias v. Patenaude & Felix*

15  *APC*, No. 20-cv-0805, 2022 WL 136816, at *6 (W.D. Wash. Jan. 14, 2022) (citation omitted)

16  (finding insufficient declaration that employees were trained not to commit the error at issue).

17  The declaration is vague and uncorroborated by any evidence in the record regarding procedures.

18  Further, Defendant can only surmise as to whether procedures were followed and how the

19  violations occurred. "If the bona fide error defense is to have any meaning in the context of a

20  strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error'

21  must require more than a mere assertion to that effect." *Reichert*, 531 F.3d at 1007. Rather, "[t]he

22  procedures themselves must be explained, along with the manner in which they were adapted to

23  avoid the error." *Id*.

24

1   Defendant's declaration merely alludes, vaguely, to broad training without any

2   explanation, or supporting evidence, showing what that training specifically entailed and how it

3   could have prevented Defendant's employee from providing inaccurate information. *See Parker*

4   *v. Peters & Freedman, LLP*, No. 17-cv-00667, 2018 WL 5904169, at *5 (C.D. Cal. Apr. 9, 2018)

5   (finding defendant's reference to an employee training program insufficient because it "does not

6   provide the Court with any facts as to how these programs are designed to avoid the specific

7   error at issue"). Nor does Defendant offer any evidence corroborating that any such training

8   actually took place and that the employee involved in Plaintiff's debt collection participated in it.

9   *See Carter v. Clark Cnty.*, 459 F. App'x 635, 636 (9th Cir. 2011) (party could not survive

10  summary judgment based on "vague, conclusory" interrogatory answers; "this court has refused

11  to find a genuine issue where the only evidence presented is uncorroborated and self-serving

12  testimony"). The evidence states only that the employee *would* have been provided instructions,

13  but this is not sufficient to show the employee was, in fact, properly trained.

14        For these reasons, the Court finds Defendant has not shown the March 2019 email was

15  the result of a bona fide error.

16        In its supplement response to the motion for partial summary judgment, Defendant now

17  asserts that the legality of the lease provision governing the forfeiture of the security deposit was

18  not decided until the state court of appeals made its decision in the underlying state court action.

19  Dkt. 46. Defendant argues that it should be allowed to further develop its bona fide error defense

20  with additional discovery. *Id*. The Court disagrees.

21        First, Defendant has made no showing that additional discovery would allow it to

22  produce evidence to show a bona fide error defense. Further, Defendant has failed to show

23  information related to its bona fide error defense is not within Defendant's sole possession.

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 14

1   Therefore, Defendant fails to show it can obtain the alleged evidence through additional

2   discovery. Because Defendant has not shown that additional discovery would raise a triable issue

3   of fact as to Defendant's bona fide error defense to prevent summary judgment, the Court

4   declines to deny summary judgment on this basis. *See Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d

5   1151, 1161 n.6 (9th Cir. 2001).

6          Second, Defendant contends it could not have known it was attempting to collect an

7   unlawful debt amount because the state court just decided the issue regarding the forfeiture of

8   security deposits. Dkt. 46. Based on the accounting statement provided to Plaintiff, Plaintiff was

9   not given credit for her $1,400.00 security deposit and was charged an additional $1,400.00 for a

10  forfeited security deposit for abandoning her lease. Dkt. 14-1, p. 21. This was unlawful and the

11  Court finds not a new principle. *See* RCW § 59.18.310; *see also Gebreseralse*, 24 Wash. App. 2d

12  650.

13         If a tenant abandons a lease, the Residential Landlord Tenant Act ("RLTA"), which was

14  established in 1973, provides specific remedies a landlord can seek. *See* RCW § 59.18.310; *see

15  also Gebreseralse*, 24 Wash. App. 2d 650. The RLTA "imposed new requirements in order for

16  the landlord to hold any of the tenant's moneys as a deposit or as security for the performance of

17  the tenant's obligations." *Silver v. Rudeen Mgmt. Co., Inc.*, 197 Wash. 2d 535, 544 (2021). A

18  landlord may not seek remedies under the RLTA and "retain a security deposit to cover damages

19  for the same breach." *Gebreseralse*, 24 Wash. App. 2d at 653. That is precisely what the landlord

20  did here, and Defendant sought to collect both the forfeited security deposit and the rent for

21  November, the one month the townhome was unoccupied. *See* Dkt. 14-1, pp. 4-5, 19, 21. The

22  landlord must either return the tenant's deposit or provide "a full and specific statement of the

23

24

1   basis for retaining any of the deposit together with the payment of any refund due the tenant

2   under the terms and conditions of the rental agreement." RCW 59.18.280(1).

3          Here, the Statement does not contain any information regarding the purported forfeiture

4   of the security deposit. Rather, the Statement does not account for the deposit and charges

5   Plaintiff for a second security deposit. *See* Dkt. 14-1. Regardless of the misleading information

6   in the Statement, Defendant sought recovery of at least $1,400.00 that was not owed, plus

7   interest on that amount. Based on the RLTA, Defendant should have known it could not seek

8   recovery of this amount at the time Defendant sought recovery, filed suit, or responded to this

9   action. Defendant also contends it had no obligation to confirm the debt from Sunset Square.

10  Dkt. 14, pp. 9-10. The Court disagrees. *See Dawson v. Genesis Credit Mgmt., LLC*, 2017 WL

11  5668073, at *4 (W.D. Wash. Nov. 27, 2017) (finding the debt collector could not "avoid liability

12  by merely stating that it was allowed to rely on [the creditor's] representations"). Therefore, the

13  Court finds Defendant's assertion that it should be allowed to invoke the bona fide error defense

14  regarding the amount of debt sought is meritless.

15         For the above stated reasons, the Court finds Plaintiff has presented sufficient evidence to

16  show Defendant's communications in the March 2019 email and the Statement violated §§

17  1692e and 1692f of the FDCPA. Defendant has not shown it is entitled to invoke the bona fide

18  error defense or that additional discovery related to the bona fide error defense is warranted.

19  Defendant has, therefore, not sufficiently rebutted Plaintiff's showing that no genuine issue of

20  material fact remains. Accordingly, Plaintiff's Motion for Partial Summary Judgment is granted

21  as to the FDCPA claims.

22

23

24

1    C.  Consumer Protection Act

2         Plaintiff also alleges Defendant's conduct violated the Washington Collection Agency

3    Act ("CAA") through the CPA. Dkt. 1-3, 13. The CAA is Washington's counterpart to the

4    FDCPA. *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009). "Like the

5    FDCPA, it prohibits collection agencies from making false representations as to the legal status

6    of a debt, threatening the debtor with impairment of credit rating, attempting to collect amounts

7    not actually owed, or implying legal liability for costs not actually recoverable, such as attorney

8    fees or investigation fees, among other practices." *Id.* (citing RCW § 19.16.250).

9         The CAA "does not provide a cause of action," but is instead enforced through the CPA.

10   *White v. Skagit Bonded Collectors, LLC*, 2022 WL 2046286, at *9 (W.D. Wash. June 7, 2022).

11   "To prevail on a private [ ]CPA claim, the plaintiff must prove that (1) the defendant engaged in

12   an unfair or deceptive act or practice (2) occurring in trade or commerce and (3) impacting the

13   public interest that (4) injured the plaintiff's business or property and (5) was caused by the

14   defendant." *Id.* (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778,

15   784-92 (Wn. Sup. Ct. 1986)). "[B]ecause actions prohibited under the CAA are declared unfair

16   acts or practices under the CPA, a violation of the CAA constitutes a per se violation of the

17   CPA." *Williams v. Columbia Debt Recovery, LLC*, No. 20-cv-1718, 2021 WL 1063330, at *4

18   (W.D. Wash. Mar. 19, 2021) (citing, *inter alia*, RCW § 19.16.440). Once the plaintiff has

19   established a *per se* violation, "she need only demonstrate the violation proximately caused

20   injury to her business or property." *White*, 2022 WL 2046286, at *10 (citing *Panag v. Farmers*

21   *Ins. Co. of Washington*, 166 Wash. 2d 27, 58 (Wn. Sup. Ct. 2009)).

22        Plaintiff first argues Defendant violated RCW § 19.16.250(21). Dkts. 1-3, 13. RCW §

23   19.16.250(21) prohibits "the collection, or attempted collection, of any amounts in addition to

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 17

the principal of a claim other than allowable interest, collection costs, or handling fees expressly

authorized by statute...." As the Court has found above, each time Defendant attempted to collect

the debt, it sought an amount, at least $1,400, that was not authorized by law. Therefore, the

attempts to collect the debt constitute violations of RCW § 19.16.250(21). *See Creager*, 618

F.Supp.3d at 1106.

Plaintiff also alleges Defendant violated RCW § 19.16.250(15). Dkts. 1-3, 13. RCW §

19.16.250(15) prohibits a collection agency from "represent[ing] or imply[ing] that the existing

obligation of the debtor may be or has been increased by the addition of attorney fees,

investigation fees, service fees, or any other fees or charges when in fact such fees or charges

may not legally be added to the existing obligation of such debtor." Defendant sought to collect a

debt that exceed the debt owed. Defendant also sought to collect interest on the entire debt

sought to be collected, including the portion of the principal that exceeded the debt owed. "As

such, Defendant's representations to Plaintiff that she owed an unlawfully inflated amount of

interest, based on the inflated balance on her lease, violated RCW § 19.16.250(15)." *Creager*,

618 F. Supp. 3d at 1107.

The Court finds Plaintiff has established Defendant violated the CAA and consequently,

committed a *per se* violation of the Washington CPA. The Court must now determine if Plaintiff

has established an injury under the CPA. As her injury, Plaintiff states she has incurred expenses

"in seeking counsel to determine her legal rights and responsibilities." *See* Dkt. 13, p. 15; *see

also* Dkt. 13-2, Gebreseralse Dec., ¶ 19. Defendant does not dispute this is sufficient to establish

an injury, see Dkts. 14, 46, and this Court finds that it is sufficient. *See Creager*, 618 F. Supp. 3d

at 1107 (finding incurring expenses "in seeking counsel to determine her legal rights and

responsibilities" was sufficient to show injury); *Schore v. Renton Collections, Inc.*, 2018 WL

1  2018417 at *5 (W.D. Wash. May 1, 2018) (finding that plaintiffs' testimony that they were

2  "forced to incur the cost of hiring an attorney" to "determine their legal rights and

3  responsibilities" demonstrates injury).

4       Therefore, on the undisputed facts presented, Defendant violated the CAA and, thereby,

5  the CPA. This Court accordingly finds that Plaintiff is entitled to summary judgment on those

6  claims.

7  **VI.    Conclusion**

8       For the above stated reasons, Plaintiff's Motion for Partial Summary Judgment (Dkt. 13)

9  is GRANTED.

10       Dated this 2nd day of May, 2023.

11

12       _____
         David W. Christel
13       Chief United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24